IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEMMA GETACHEW, et al. | ) | |
| | ) | CASE NO. 1:25-cv-00219 |
| Plaintiffs | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| v. | ) | |
| | ) | MEMORANDUM IN OPPOSITION TO |
| THE CITY OF WILLOWICK, et al. | ) | DEFENDANTS' JOINT MOTION FOR |
| | ) | JUDGMENT ON THE PLEADINGS |
| Defendants | ) | AND ALTERNATIVE MOTION TO |
| | ) | AMEND PLAINTIFFS' COMPLAINT |

Now come Plaintiffs, by and through the undersigned counsel, and in response to

Defendants' joint motion for judgment on the pleadings submit the memorandum in opposition

attached hereto and incorporated herein by reference.

Respectfully Submitted,

*/s/ Mark S. O'Brien*

Mark S. O'Brien, Esq. (0072886)
Mark S. O'Brien & Associates, LLC
Cedar-Grandview Building
12434 Cedar Road, Suite 11
Cleveland Heights, Ohio 44106
Telephone: (216) 331-7400
E-mail: mark@marksobrienlaw.com
Attorney for Plaintiffs

TABLE OF CONTENTS

Page

I.       Statement of the Case……………………………………………………………...4

II.      Statement of the Facts……………………………………………………………..4

III.     Law and Argument………………………………………………………………..8

IV.     Conclusion………………………………………………………………………..26

TABLE OF AUTHORITIES

Cases                                                                                                        Page

Akil Childress v. City of Cincinnati, 765 F.Supp.3d 662…………………………………….11
American Chemical Society v. Leadscope, Inc., 133 Ohio St. 3d 366, 978 N.E.2d 832……….17
Ashcroft v. Iqbal, 556 U.S. 662……………………………………………………………9, 10
Bell v. City of Southfield, 37 F.4th 362……………………………………………………..9
Bowersock v. City of Lima, 2008 U.S. Dist. LEXIS 46277……………………………………11
Caraway v. Corecivic of Tennessee, LLC, 98 F.4th 679……………………………………….9
Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80…………………………………8
Community Church of Chesterland Ohio v. Penny, 759 F.Supp.3d 805…………………….9, 10
Doe v. Miami University, 882 F.3d 579………………………………………………………..9
EEOC v. J.H. Routh Packing, 246 F.3d 850……………………………………………………8
Elsisy v. City of Keego Harbor, 2021 U.S. Dist. LEXIS 43651………………………………11
Fred Siegel Co., LPA v. Arter & Hadden, 85 Ohio St. 3d 171, 707 N.E.2d 853………………..18
Friedler v. Equitable Life Assurance Society of U.S., 86 F. Appx. 50…………………………26
Futernick v. Sumpter Township, 78 F.3d 1051………………………………………………11
Garavaglia v. Gogebic County, 2024 U.S. App. LEXIS 2192………………………………..11
Gracey General Partnership v. City of Clarksville, 2025 U.S. Dist. LEXIS………………….11
Heyne v. Metropolitan Nashville Public Schools, 655 F.3d 556, 563…………………………15
Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985)………………………………………………15
Ingram v. Regano, 2025 U.S. App. LEXIS 3587……………………………………………14
Jackson v. City of Cleveland, 925 F.3d 793…………………………………………………9
Jackson v. Columbus, 117 Ohio St.3d 328, 883 N.E.2d 1060………………………………17
Kenty v. Transamerica Premium Insurance, 72 Ohio St. 3d 415, 650 N.E.2d 863……………..14
Kue v. North, 2024 U.S. App. LEXIS 18432………………………………………………10
Logan v. City of West Bloomfield, 2018 U.S. Dist. LEXIS 127692…………………………11
Makris v. Commissioner of Social Security, 2021 U.S. Dist. LEXIS 263215………………….8
Maternal Grandmother, ADMR v. Hamilton County Department of Job and Family Services,
167 Ohio St. 3d 390, 193 N.E.3d 536………………………………………………………25
McCausland v. Charter Township, 2019 U.S. Dist. LEXIS 168176……………………………11
McCausland v. Charter Township of Canton, 2022 U.S. Dist. LEXIS 240091…………………11
Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed.2d 411……………………25
Monell v. Department of Social Services, 436 U.S. 658, 694………………………………...22
Ohio v. United States, 849 F.3d 313, 318……………………………………………………10
Percy v. Charter Township, 2022 U.S. Dist. LEXIS 44186…………………………………11
Post v. City of Munroe Falls, 861 F. Appx. 69……………………………………………..17
Redding v. St. Eward, 241 F.3d 530………………………………………………………..11
Reedy v. Huron School District, 764 F.Supp.3d 591……………………………………10, 25
Rowe v. City of Elyria, 38 Fed.Appx. 277…………………………………………………11
Talmer Bank & Trust v. Malek, 651 F. Appx 438…………………………………………...9
The New Hampshire Insurance Company v. Marinemax of Ohio, Inc., 408 F. Supp.2d 526…….8
Tolliver v. Noble, 2024 U.S. App. LEXIS 29001……………………………………………9
Tucker v. Middleburg-Legacy Place, 539 F.3d 545…………………………………………9
United States ex rel. Bledsoe v. Community Health Systems, 501 F.3d 493……………………8

3

TABLE OF AUTHORITIES, Cont.

Cases                                                                                                          Page

Watkins v. City of Lebanon, 2024 U.S. Dist. LEXIS 187202…………………………………...11
Weidman v. Hildebrant, 178 Ohio St.3d 3………………………………………………………….26
Westley v. Harris, 2024 U.S. App. LEXIS 22593…………………………………………………...9
Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA, 68 Ohio St.3d 294, 626 N.E.2d 115………..20

MEMORANDUM IN OPPOSTION

I.     STATEMENT OF THE CASE

This case concerns claims for redress for the violation of Plaintiffs' civil rights, pursuant to 42 U.S.C. § 1983, for civil conspiracy, pursuant to 42 U.S.C. § 1985, and for associated tortious acts committed by Defendants. Plaintiffs filed their complaint on February 5, 2025. Defendants filed answers, basically denying Plaintiffs' claims, on April 14, 2025. Three months later, on July 14, 2025, Defendants filed a joint motion for judgment on the pleadings, pursuant to Civ.R. 12(c), contending that Plaintiffs' complaint "fails to state a claim upon which relief may be granted." Plaintiffs oppose Defendants' joint motion, and request that the Court deny the same, for the reasons herein set forth.

II.    STATEMENT OF THE FACTS

Plaintiffs are the beneficial owners of Shoregate Towers, an apartment complex located in Willowick, Ohio (the "Property"). Plaintiffs allege that the City of Willowick (the "City"), and certain of its employees, engaged in a pattern of harassment intended to destroy Plaintiffs' investment in the Property – by enforcing municipal ordinances against the Property's owners in a manner different from that employed relative to other owners of residential rental property within its jurisdiction. See, generally, Plaintiffs' complaint, introduction. In addition, Plaintiffs allege that the City was aided in its attempts to destroy their investment in the Property by Defendants Lake Metropolitan Housing Authority ("LMHA") and Fair Housing Resource Center, Inc. ("FHRC"), and certain employees of these Defendants, who, among other things, publicized false statements relative to the condition of the Property with the intent of encouraging the Property's tenants to abandon their leasehold interests. Id. Plaintiffs further allege that Defendants engaged in such actions as a result of their enmity towards Plaintiffs

5

(because of their race (Black) and national origin (African/Ethiopian)).  Id.  In essence, Plaintiffs allege that the City, LMHA, FHRC and the individually named Defendants conspired to cause the financial collapse of the Property because of their bias and prejudice towards Plaintiffs.

Plaintiffs contend that the City and its building inspectors, Defendants Sean Brennan ("Brennan") and Al Ferritto ("Ferritto"), after learning that Plaintiffs were Black and African/Ethiopian, began to inspect the Property on a daily basis and to cite the owners of the Property for purported maintenance violations.  See, complaint, ¶¶ 59 – 77.  These Defendants also filed numerous criminal property maintenance violation cases against Plaintiffs and the titled owner of the Property, Shoregate Towers NS, LLC ("STNS"), in the Willoughby Municipal Court, alleging that Plaintiffs and STNS had violated certain provisions of the International Property Maintenance Code (the "IPMC").  See, complaint, ¶¶ 19 – 57.

Between December 1, 2021 and December 31, 2023 the City caused 13 criminal cases to be filed against Plaintiffs and STNS.  See, complaint, ¶ 38.  Of these cases, 11 were ultimately resolved in favor of the criminal defendants.  See, complaint, ¶ 40.  Of the 7 cases filed against Plaintiffs, not one case resulted in a final judgment of conviction.  See, complaint, ¶ 41.  In addition, members of the City's fire department instituted proceedings against STNS, alleging that it had violated provisions of the Ohio Fire Code (the "OFC").  See, complaint, ¶ 30.  Those proceedings, however, were discontinued after Plaintiffs lost possession and control of the Property.  See, complaint, ¶ 72.  Plaintiffs contend that Defendants communicated with STNS' lender, Fannie Mae, falsely stating to Fannie Mae that Plaintiffs were not maintaining the Property.  See, complaint, ¶ 67.  As a result, on May 24, 2024, Fannie Mae filed a foreclosure action against the Property's owner (i.e., Fannie Mae v. Shoregate Towers NS, LLC, et al., Lake County Court of Common Pleas, Case No. 24-CF-000766) (the "Foreclosure Action")).  Id.  In

conjunction with the filing of that case, Fannie Mae also moved the court to appoint a receiver over the Property.  See, complaint, ¶ 68.  Fannie Mae's motion was granted, and a receiver was appointed to assume possession of, and control over, the Property on August 16, 2024.  See, complaint, ¶ 69.  At that point in time Plaintiffs lost possession and control of the Property. Thereafter, the City, having achieved its objective, discontinued its campaign of harassment against Plaintiffs and STNS, withdrawing all pending citations and discontinuing its pursuit of previously filed complaints and appeals.  See, complaint, ¶¶ 70 – 75.

Plaintiffs further allege that the City, LMHA and FHRC, along with their employees, all conspired to destroy Plaintiff's investment in the Property.  See, complaint, ¶¶ 111 – 119. Plaintiffs allege that Brennan and Defendant Aaron Brewer ("Brewer"), LMHA's property inspector, coordinated their efforts, with Brennan and Brewer conducting duplicative inspections of the Property and falsely contending that the Property was not being properly maintained by its owners.  Id.  Employees of LMHA and FHRC also appeared at hearings in the Willoughby Municipal Court and stated, along with the City's employees, that the Property was not being maintained by its owners.  See, complaint, ¶¶ 79 – 82; ¶¶ 105 – 110.  Such statements were reiterated to members of the news media who were present at court hearings and republished in news stories relative to the City's prosecution of Plaintiffs and STNS.  Id.  As a result of the foregoing, LMHA cancelled all of its Section 8 contracts with STNS, severely damaging the Property's financial viability.

Plaintiffs contend that the City, LMHA, FHRC and their respective employees all engaged in a coordinated campaign to destroy the economic viability of Shoregate Towers. Plaintiffs contend that Defendants conspired to encourage tenants of Shoregate Towers to vacate the Property by publicizing false statements of fact that the Property was not properly

7

maintained. In addition, Plaintiffs contend that FMHA, LMHA and their employees encouraged the Property's tenants to abandon their leasehold interests. Plaintiffs further contend that Defendants falsely reported to Fannie Mae that the Property was not being properly maintained, ultimately resulting in the filing of the Foreclosure Action.

Plaintiffs allege that the City does not enforce its municipal ordinances relative to other owners of residential rental property within its jurisdiction in the manner in which it has enforced its ordinances relative to Plaintiffs. Prior to Plaintiffs acquiring their beneficial ownership interests in the Property the City never inspected the Property on a daily basis and never filed duplicative criminal property maintenance cases against the previous owners of Shoregate Towers. It was only after Plaintiffs acquired an interest in the Property, and it was discovered that Plaintiffs were Black and African/Ethiopian, that the City and its employees began to harass Plaintiffs with continual inspections and the filing of numerous criminal cases. Further, after the receiver was appointed in the Foreclosure Action, and Plaintiffs lost possession and control of the Property, the City ceased all enforcement actions related to the Property and discontinued its practice of inspecting the Property on a daily basis.

Plaintiffs contend that the City and its employees were not actually concerned with the condition of Shoregate Towers, but rather with the race, ethnicity and national origin of its beneficial owners. Prior to Plaintiffs' ownership of Shoregate Towers, previous owners were white, middle-aged men. Plaintiffs are Black and African/Ethiopian. When the Property was owned by white, middle-aged men, the City did not enforce the IPMC or the OFC against the owners of the Property. It was only when the Brennan and Ferritto discovered that Plaintiffs were Black and African/Ethiopian that they began to conduct daily inspections of the Property and to cite STNS and Plaintiffs for ostensible criminal violations relative to the Property. After

8

the receiver (another middle-aged white man) was appointed in the Foreclosure Action, moreover, the City ceased its daily inspections of the Property and discontinued its practice of filing criminal property maintenance complaints relative to the Property. As a result of the foregoing Plaintiffs have lost their investment in the Property. For this they seek redress from Defendants.

III.     LAW AND ARGUMENT

A.     Legal Standard

The Federal Rules of Civil Procedure provide for a liberal system of pleading. Makris v. Commissioner of Social Security, 2021 U.S. Dist. LEXIS 263215 (Northern District of Ohio), at *3, citing to EEOC v. J.H. Routh Packing, 246 F.3d 850, 851 (6th Cir. 2007). Rule 8(a) of the Federal Rules provides as follows:

> CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
>      (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>      (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>      (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

This "notice pleading" standard constitutes "a rejection of formal/technical pleading requirements 'in favor of an approach designed to reach the merits of an action.'" Id., citing to United States ex rel. Bledsoe v. Community Health Systems, 501 F.3d 493, 503 (6th Cir. 2007). In order to satisfy this standard, a complaint "must merely 'give the defendant fair notice of what the plaintiff's claim is and the grounds on which is rests.'" The New Hampshire Insurance Company v. Marinemax of Ohio, Inc., 408 F. Supp.2d 526, 528 (Northern District of Ohio 2006), citing to Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

9

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed under the same standard employed for motions to dismiss under Federal Rule 12(b)(6). Tolliver v. Noble, 2024 U.S. App. LEXIS 29001, at *5, citing to Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008).  In considering such a motion, a trial court is required to accept the plaintiff's allegations as true and may grant such a motion only if the moving party is "clearly entitled to judgment."  Id.  A motion to dismiss pursuant to Rule 12(b)(6) tests whether a plaintiff's complaint meets the standard set forth in Rule 8.  Community Church of Chesterland Ohio v. Penny, 759 F.Supp.3d 805, 808 (N.D. Ohio 2024).  Under Rule 12(B)(6), moreover, a trial court is permitted generally to consider only the allegations contained within the plaintiff's complaint and is precluded from giving credence to extraneous materials.  Caraway v. Corecivic of Tennessee, LLC, 98 F.4th 679, 683 (6th Cir. 2024), citing to Bell v. City of Southfield, 37 F.4th 362, 364 (6th Cir. 2022) ("courts evaluate the sufficiency of a claim *based only on the four corners of the complaint*") (emphasis added).

To survive a motion for judgment on the pleadings, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Tolliver, *supra*., at *5, citing to Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.1937, 173 L.Ed.2d 868 (2009).  See, also, Westley v. Harris, 2024 U.S. App. LEXIS 22593 (6th Cir.), at *4, citing to Jackson v. City of Cleveland, 925 F.3d 793, 806 (6th Cir. 2019), quoting Doe v. Miami University, 882 F.3d 579, 588 (6th Cir. 2018) ("We thus construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the complaint contains enough facts to 'state a claim to relief that is plausible on its face.'"), and Talmer Bank & Trust v. Malek, 651 F. Appx 438, 441 (6th Cir. 2016) ("For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the

10

opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."); and <u>Kue v. North</u>, 2024 U.S. App. LEXIS 18432 (6th Cir.), at *7, quoting <u>Ohio v. United States</u>, 849 F.3d 313, 318 (6th Cir. 2017) ("We 'must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'")

A plausible legal claim requires that "the complaint's factual allegations must be sufficient for a court 'to draw the reasonable inference that the defendant is liable.'" <u>Penny</u>, *supra*., 759 F.Supp.3d 805, citing to <u>Ashcroft</u>, *supra*.  See, also, <u>Reedy v. Huron School District</u>, 764 F.Supp.3d 591, 601 (E.D. Michigan 2025), citing to <u>Ashcroft</u>, *supra.* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Plaintiffs' claims meet the foregoing standards.

B.      <u>Plaintiffs' Complaint Gives Sufficient Notice to Defendants of Plaintiffs' Claims</u>

Plaintiffs' complaint sets forth in readily understandable terms claims against Defendants for violation of Plaintiffs' civil rights and civil conspiracy, as well as for malicious prosecution, abuse of process, tortious interference with business relationships and defamation.  Plaintiffs' complaint is sufficiently clear in its factual allegations that the City, LMHA, FHRC and the individually named Defendants conspired to destroy Plaintiffs' investment in the Property – all because of Defendants' prejudice towards Plaintiffs (based on the color of their skin and the country from which they emigrated).  There is nothing ambiguous about Plaintiffs' contentions. Rather, the complaint sets forth factual allegations that are sufficient for this Court to draw the reasonable inference that Defendants are liable for the misconduct alleged.  As such, Defendants

11

are not "clearly entitled to judgment" – requiring that the Court deny Defendants' joint motion for judgment on the pleadings.

(1)      *Plaintiffs' § 1983 Claim is Plausible on its Face*

In order to state a plausible constitutional violation under 42 U.S.C. § 1983, "a plaintiff must plead enough facts to show that (1) they were deprived of a constitutional right…and (2) the deprivation was caused by a person acting under color of law."  Garavaglia v. Gogebic County, 2024 U.S. App. LEXIS 2192, at *4, citing to Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  Plaintiffs' complaint satisfies this standard.

First, cases involving selective enforcement of local laws, including property maintenance codes, are cognizable under 42 U.S.C. § 1983.  Futernick v. Sumpter Township, 78 F.3d 1051, 1057 (6th Cir. 1996) ("intentional selective enforcement because of race, nationality, religion, or gender is grounds for § 1983 relief").  See, also, Bowersock v. City of Lima, 2008 U.S. Dist. LEXIS 46277 (N.D. Ohio); Gracey General Partnership v. City of Clarksville, 2025 U.S. Dist. LEXIS (M.D. Tennessee); Elsisy v. City of Keego Harbor, 2021 U.S. Dist. LEXIS 43651 (E.D. Michigan); Watkins v. City of Lebanon, 2024 U.S. Dist. LEXIS 187202 (M.D. Tennessee); Rowe v. City of Elyria, 38 Fed.Appx. 277 (6th Cir. 2002); Logan v. City of West Bloomfield, 2018 U.S. Dist. LEXIS 127692 (E.D. Michigan); Percy v. Charter Township, 2022 U.S. Dist. LEXIS 44186 (E.D. Michigan); McCausland v. Charter Township, 2019 U.S. Dist. LEXIS 168176 (E.D. Michigan); McCausland v. Charter Township of Canton, 2022 U.S. Dist. LEXIS 240091 (E.D. Michigan); Akil Childress v. City of Cincinnati, 765 F.Supp.3d 662, 681 (S.D. Ohio  2025).

As in the foregoing cases, Plaintiffs assert claims for selective enforcement of the IPMC and the OFC by the City and its employees.  See, complaint, ¶¶ 59 – 77.  Plaintiffs contend that

12

the City and its employees enforced these codes relative to the Property and its owners, but did not do so with respect to owners of similarly situated residential rental premises within its jurisdiction or with respect to prior owners of the Property.  See, complaint, ¶ 63.  Further, Plaintiffs allege that after they lost control of the Property (upon the appointment of the receiver in the Foreclosure Action), the City and its employees ceased their harassment of Plaintiffs and STNS and discontinued all enforcement action relative to the Property.  See, complaint, ¶ 72.  Such allegations clearly set forth a plausible claim under 42 U.S.C. § 1983.

Second, in order to meet the "under color of state law" requirement, a defendant in a § 1983 action must have "exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Redding, *supra*., 241 F.3d 530, 533.  Plaintiffs allege that the City and its employees "engaged, *under color of law*, in an intentional policy and practice of enforcing the IPMC, the OFC and other applicable codes with respect to Shoregate Towers in a manner that differed from how it enforced these codes with respect to other residential rental properties with the City of Willowick."  See, complaint, ¶ 59 (emphasis added).  Plaintiffs allege that Defendants Brennan, Ferritto, Malovrh and O'Connell were all building and/or fire inspectors employed by the City whose duty it was to enforce the IPMC and the OFC.  See, complaint, ¶¶ 23 – 28.  In addition, Plaintiffs allege that after these Defendants learned of Plaintiffs' race, ethnicity and national origin, they began to cite the Property for numerous code violations and to file criminal property maintenance violation cases against Plaintiffs and STNS.  See, complaint, ¶¶ 30 – 39.

The complaint also alleges that the City filed 13 separate criminal property maintenance cases, all citing numerous violations, against Plaintiffs and STNS.  See, complaint, ¶ 38.  Of these cases, 11 were resolved in favor of the criminal defendants.  See, complaint, ¶ 40.  In

13

addition, of the 7 cases filed against Plaintiffs, not one case ultimately resulted in a judgment of conviction.  See, complaint, ¶ 41.  The City's filing of these cases was in contrast to its normal policy of discontinuing property maintenance violation matters after a subject property has been brought into compliance.  See, complaint, ¶¶ 44 – 48.  Although not specifically stated in Plaintiffs' complaint, the City's prosecutor, Defendant Mandy Gwirtz ("Gwirtz"), admitted at a pretrial during one of the above matters that she had "no discretion" when it came to Shoregate Towers and that the City would only permit her to accept a guilty plea and acquiescence to the maximum fine from Plaintiffs and STNS in order to avoid a trial, notwithstanding prior statements to the court that the City's usual practice, as in other jurisdictions, was to dismiss cases at the defendant's cost once a property had been brought into compliance.

The fact that 11 out of 13 cases filed over a two-year period did not result in any criminal conviction relative to Shoregate Towers' purported maintenance failures gives rise to the reasonable inference that the City and its employees were enforcing the IPMC and the OFC against STNS and Plaintiffs in a manner that differed from the manner in which it enforced these codes relative to other owners of residential rental property within its jurisdiction, and that it was doing so not to achieve some legitimate objective, but in furtherance of an nefarious purpose. Further, the fact that the City ceased its enforcement activities relative to the Property once a receiver had been appointed in the Foreclosure Action, and Plaintiffs lost possession and control of the Property, gives rise to the reasonable inference that the City's prior enforcement actions stemmed not from any legitimate concern for the Property's condition, but from an improper concern for Plaintiffs' race and ethnicity.

Although not specifically stated in Plaintiffs' complaint, the two prior beneficial owners of Shoregate Towers, Elliot Antebi and Doug Price, were both middle-aged white men.  The

14

City, however, never issued violation notices or filed criminal property maintenance violation cases against STNS or the Property when they owned the same. After two Black, Ethiopian individuals acquired ownership of the Property, however, the City began to enforce the IPMC and the OFC against STNS and Plaintiffs in an aggressive manner. Later, when Plaintiffs lost possession and control of the Property, the City ceased all enforcement action relative to Shoregate Towers. Although Brennan, Ferritto, Gwirtz and others at the City previously alleged in court that the Property suffered from numerous violations effecting the health and safety of the Property's tenants, once Plaintiffs were no longer in possession and control of the Property these Defendants ceased all enforcement activities relative to the Property. To this day, the City no longer harasses the Property or the receiver, seemingly having forgotten about the property maintenance defalcations of which they were formerly so critical. Such facts give rise to the inference that the City and its employees purposefully harassed Plaintiffs and STNS on account of a bias and prejudice they harbored towards Plaintiffs. Such facts, and the reasonable inferences to be derived therefrom, clearly give rise to the conclusion that the City and its employees are guilty of violating Plaintiffs constitutional rights – by selectively enforcing the IPMC and the OFC against STNS and Plaintiffs. As such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' § 1983 claim.

(2) *Plaintiffs' § 1985 Claim is Plausible on its Face*

Civil conspiracy, under Ohio law, is defined as the "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Ingram v. Regano, 2025 U.S. App. LEXIS 3587 (6th Cir. 2025), at *16, citing to Kenty v. Transamerica Premium Insurance, 72 Ohio St. 3d 415, 1995-Ohio-61, 650 N.E.2d 863, 866 (1995). To prevail on a claim of civil conspiracy the plaintiff must demonstrate

15

that  (i) the alleged conspirators engaged in a single plan, (ii) each coconspirator shared in the general conspiratorial objective, and (iii) an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.  Hooks v. Hooks, 771 F.2d 935 (6th Cir. 1985). Although conspiracy claims require more at the pleading stage than "vague and conclusory allegations," such claims may be proven by circumstantial evidence.  Heyne v. Metropolitan Nashville Public Schools, 655 F.3d 556, 563 (6th Cir. 2011).  The 6th Circuit has recognized, moreover, that "A case brought under the Civil Rights Act should not be dismissed at the pleading stage unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of his claim."  Azar v. Conley, 456 F.2d 1382, 1391 (6th Cir. 1972), citing to Scher v. Board of Education of West Orange, 424 F.2d 741, 744 (3d Cir. 1970).

Plaintiffs' complaint sets forth sufficient factual allegations to support their claim for civil conspiracy under 42 U.S.C. § 1985.  Plaintiffs allege that the City, LMHA, FHRC and the individually named Defendants contacted tenants of Shoregate Towers and encouraged them to discontinue their tenancies with STNS.  See, complaint, ¶ 115.  Plaintiffs further allege that Brennan and Brewer coordinated their efforts, falsely contending that the Property was not being properly maintained.  See, complaint, ¶ 116.  Plaintiffs further allege that employees of LMHA and FHRC were present at hearings before the Willoughby Municipal Court and disparaged STNS and Plaintiffs at criminal proceedings involving the Property.  See, complaint, ¶¶ 112 – 113.  Plaintiffs further allege that Defendant coordinated their efforts "in a combined attack against Plaintiffs and the Property."  See, complaint, ¶ 114.  These contentions are supported by earlier contentions within Plaintiffs' complaint, including that FHRC's employees uttered defamatory statements to members of the news media that damaged STNS and Plaintiffs, as well

16

as the City's contacting of Fannie Mae and stating falsely that the Property was not being properly maintained.  See, complaint, ¶¶ 89 – 92; ¶¶ 105 – 110.  Further, Plaintiffs allege that LHMA cancelled Section 8 contracts with STNS on account of Defendants' actions.  See, complaint, ¶¶ 84 – 87.

There was no need for any employees of LMHA or FHRC to be present at any criminal hearings involving the Property, but several employees of these organizations, including LMHA Defendant Brewer and FHRC Defendants Patricia Kidd ("Kidd") and Michelle Brunson ("Brunson"), were nonetheless present at court hearings, including the jury trial that took place in January, 2024, to disparage Plaintiffs and STNS.  See, complaint, ¶ 105.  Brewer, although not involved with the City's prosecution, even appeared at that trial and testified on behalf of the City, alleging that the Property was not being properly maintained in accordance with Section 8 standards.  Such facts give rise to the reasonable inference that Defendants all shared a conspiratorial plan and objective to deprive Plaintiffs of their constitutional rights – to destroy their financial interest in the Property on account of animus based on their race and national origin.  In conjunction with the City's prosecution of STNS and Plaintiffs, LMHA, FHRC and the individually named Defendants employed by these organizations engaged in activities that led to the filing of the Foreclosure Action and Plaintiffs' eventual loss of possession and control of the Property.

As previously stated, Defendants were aware of Plaintiffs' race and national origin.  They all appeared at court hearings concerning criminal prosecutions involving Plaintiffs and STNS.  Although not specifically set forth in Plaintiffs' complaint, at such times employees of STNS and LMHA would confer with employees of the City relative to the criminal prosecutions.  Such facts give rise to a reasonable inference that the City, LMHA and FHRC, through their

17

employees, were coordinating their efforts in furtherance of the City's illegitimate purpose.

Such facts, and the reasonable inferences to be derived therefrom, clearly give rise to the

conclusion that the City and its employees are guilty of conspiring to violate Plaintiffs

constitutional rights – in an effort to destroy Plaintiffs' financial interest in the Property. As

such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' § 1985 claim.

> (3)     *Plaintiffs' Defamation Claims are Plausible on their Face*

Defamation, under Ohio law, concerns the publication of a false statement of fact, made

with the requisite degree of fault, that injures a person's reputation or exposes him or her to

public hatred, contempt, ridicule or shame, or adversely affects him in his trade or business. Post

v. City of Munroe Falls, 861 F. Appx. 69 (6ᵗʰ Cir. 2021), at * 79, citing to Jackson v. Columbus,

117 Ohio St.3d 328, 2021-Ohio-1014, 883 N.E.2d 1060 (2008). In order to prove a claim of

defamation, the plaintiff must demonstrate the following elements: (1) that a false statement of

fact was made, (2) that was defamatory, (3) that the statement was published, (4) that the

plaintiff suffered damages as a result of the publication of the statement, and (5) that the

defendant acted with the requisite degree of fault. Id., citing to American Chemical Society v.

Leadscope, Inc., 133 Ohio St. 3d 366, 2012-Ohio-4193, 978 N.E.2d 832 (2012). Plaintiffs'

complaint contains factual allegations containing these elements.

In Count II of their complaint, Plaintiffs allege that employees of the City communicated

with Fannie Mae, stating to them falsely that STNS and Plaintiffs were not maintaining the

Property in accordance with the applicable standards. See, complaint, ¶¶ 79 – 80. Plaintiffs also

claim that such statements were made maliciously. See, complaint, ¶ 81. As a result of the

same, Plaintiffs allege that they have suffered financial loss. See, complaint, ¶ 82. As

previously stated, Plaintiffs claim that Fannie Mae filed the Foreclosure Action as a result of the

18

statements made to it.  See, complaint, ¶¶ 67 – 71.  Such factual allegations are sufficient to set forth a plausible claim of defamation as it relates to the City and its employees.

In Count VII of their complaint, Plaintiffs allege that employees of the FHRC, including Kidd and Brunson, communicated with the Willoughby Municipal Court and members of the news media present at criminal proceedings involving Plaintiffs, stating to them falsely that STNS and Plaintiffs were not maintaining the Property in accordance with the applicable standards.  See, complaint, ¶¶ 105 – 108.  Plaintiffs also claim that such statements were made maliciously.  See, complaint, ¶ 109.  As a result of the same, Plaintiffs allege that they have suffered financial loss.  See, complaint, ¶ 110.  As above, such factual allegations are sufficient to set forth a plausible claim of defamation as it relates to the City and its employees.  As such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' defamation claims.

(4)     *Plaintiffs' Tortious Interference Claims are Plausible on their Face*

Tortious interference involves the intentional and improper interference with a contract that gives rise to damages.  Fred Siegel Co., LPA v. Arter & Hadden, 85 Ohio St. 3d 171, 176, 707 N.E.2d 853, 858 (1999).  In order to prevail on a claim of tortious interference, a plaintiff must establish the following elements: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's procurement of the contract's breach, (4) lack of justification, and (5) damages.  Id.  Plaintiffs' complaint contains factual allegations containing these elements.

In Count III of Plaintiffs' complaint, Plaintiffs' allege that the City knew that STNS maintained contractual relationships (Section 8 contracts) with LMHA.  See, complaint, ¶ 84.  Plaintiffs also allege that the City communicated with LMHA and encouraged it to cancel its contracts with STNS.  See, complaint, ¶ 85.  As a result, Plaintiffs allege that they suffered

financial loss.  See, complaint, ¶ 87.  Such factual allegations are sufficient to set forth a plausible claim of tortious interference relative to the City's procurement of the termination of the Section 8 contracts between LHMA and STNS.

In Count IV of Plaintiffs' complaint, Plaintiffs' allege that the City knew that STNS maintained a contractual relationship (mortgage loan) with Fannie Mae.  See, complaint, ¶ 89. Plaintiffs also allege that the City communicated with Fannie Mae and encouraged it to take action with respect to Shoregate Towers.  See, complaint, ¶ 90.  As a result, Plaintiffs allege that they suffered financial loss.  See, complaint, ¶ 91.  Such factual allegations are sufficient to set forth a plausible claim of tortious interference relative to the City's interference with STNS' mortgage loan.  As such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' tortious interference claims.

(5)     *Plaintiffs' Malicious Prosecution Claim is Plausible on its Face*

A criminal defendant maintains the right to recover for damages caused by the misuse of criminal prosecutions that result in harm to that defendant.  Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA, 68 Ohio St.3d 294, 297, 626 N.E.2d 115, 117 (1994).  In order to prevail on a claim of malicious prosecution, a plaintiff must establish the following elements: (1) malice in instituting or continuing criminal prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.  Id.  Plaintiffs' complaint contains factual allegations containing these elements.

First, Plaintiffs allege that the City lacked probable cause to proceed against Plaintiffs under Ohio law because they were not the titled owners of the Property and because they had not assumed any duties relative to the Property.  See, complaint, ¶ 95. Second, Plaintiffs allege that the City acted with malice when instituting charges against Plaintiffs when they knew its actions,

20

if any, properly were against the titled owner of the Property.  See, complaint, ¶ 96.  Third, all criminal prosecutions against Plaintiffs resulted ultimately in no convictions.  See, complaint, ¶ 97.  As set forth in Count V of Plaintiffs' complaint, Plaintiffs were exonerated on all charges filed against them by the City.  Id.  Such factual allegations are sufficient to set forth a plausible claim of malicious prosecution under Ohio law.  As such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' tortious interference claim.

(6)    <em>Plaintiffs' Malicious Prosecution Claim is Plausible on its Face</em>

Plaintiffs assert their sixth cause of action, for abuse of process, in the alternative to their claim of malicious prosecution.  In order to prevail on a claim of abuse of process, a plaintiff must establish the following elements: (1) a legal proceeding has been set in motion in proper form and with probable cause, (2) the proceeding has been perverted to accomplish an ulterior purpose for which it was not intended, and (3) damages resulting from the proceedings.  Yaklevich, <em>supra</em>., 68 Ohio St.3d 294, 294, 626 N.E.2d 115, 115.  Plaintiffs' complaint contains factual allegations containing these elements.

Plaintiffs allege that the City filed charges against them with the improper, ulterior purpose of coercing them into settling criminal cases filed against STNS and to harass and intimidate them into divesting themselves of their ownership interests in STNS.  See, complaint, ¶ 100.  Although all charges were eventually resolved in Plaintiffs' favor, they suffered damages as a result of the City's actions, including the loss of their investment in the Property.  See, complaint, ¶ 103.  Such factual allegations are sufficient to set forth a plausible claim of abuse of process under Ohio law.  As such, the Court should deny Defendants' joint motion as it pertains to Plaintiffs' abuse of process claim.

21

   C.  <u>Plaintiffs' Complaint Contains Sufficient Facts to Implicate All Defendants</u>

Plaintiffs contend that the City and its employs engaged in "an intentional policy and practice of enforcing the IPMC, the OFC and other applicable codes with respect to Shoregate Towers in a manner that differed from how it enforced these codes with respect to other residential rental properties within the City of Willowick."  See, complaint, ¶ 59.  Allegations with regard to policy and practice necessarily give rise to an inference that officers and employees of the City, such as Gwirtz, Mayor Michael Vanni ("Vanni") and law director Stephanie Landgraf ("Landgraf") were necessarily involved in the decision to harass Plaintiffs by filing duplicative criminal complaints against STNS and Plaintiffs.

As stated elsewhere herein, although not specifically stated in Plaintiffs' complaint, Gwirtz stated on the record before the Willoughby Municipal Court during one such legal proceeding that she no longer was permitted the discretion to engage in plea negotiations with Plaintiffs and STNS.  Although she readily admitted that the City's normal procedure was to discontinue property maintenance enforcement actions once a property had been brought into compliance, others within the City's administration would no longer allow her to accept pleas from STNS or Plaintiffs other than pleas whereby such criminal defendants accepted full responsibility for purported maintenance issues at Shoregate Towers.  Such facts clearly implicate Vanni and Landgraf in Plaintiffs' 42 U.S.C. § 1983 claim.

With regard to Kidd and Brunson, Plaintiff's complaint contains factual allegations that similarly implicate these Defendants in Plaintiffs' 42 U.S.C. § 1985 claim.  As stated elsewhere herein, these Defendants regularly appeared at court hearings in the Willoughby Municipal Court relative to property maintenance issues at Shoregate Towers.  Further, although not specifically stated in Plaintiffs' complaint, Kidd and Brunson drafted and posted notices at the Property

22

encouraging tenants to contact them relative to property maintenance issues at Shoregate Towers.  In addition, although not specifically stated in Plaintiffs' complaint, these Defendants encouraged tenants to file civil cases against STNS relative to their tenancies.  Further, Plaintiffs allege that these Defendants conspired with the other Defendants in a "combined attack against Plaintiffs and the Property."  See, complaint, ¶ 114.

The FHRC Defendants' actions included attending criminal court hearings in which they had no interest and conferring with the City's prosecutor and commenting to members of the news media who were also present relative to maintenance issues at the Property.  See, complaint, ¶ 106 – 110.  In light of what was going on at the time (i.e., the criminal prosecution of Plaintiffs and STNS), the inference is clear that Kidd and Brunson were assuming an active role in the harassment of Plaintiffs.

The same can be said of LMHA Defendant Eric Martin ("Martin").  Martin is the CEO of LMHA.  Although not specifically set forth in Plaintiffs' complaint, this Defendant had reversed an earlier decision of Brewer to suspend payment on LMHA Section 8 HAP payments to STNS, stating to Plaintiffs that the suspension was should not have been affected.  Later, after the City filed 6 criminal complaints against STNS and Plaintiffs at the end of August, 2023, LMHA again suspended, and then terminated, all Section 8 contracts with Shoregate Towers.  Plaintiffs claim that there were no serious violations relative to Section 8 HAP guidelines, and that many Section 8 tenants had no desire to vacate Shoregate Towers.  Nonetheless, LMHA suspended, and then terminated, all of its HAP contracts with STNS.  Given the timing of the terminations (shortly after the criminal cases were filed), the inference is clear that Brewer, Martin and LMHA were cooperating with the City in its plan to destroy Plaintiff's financial interest in the Property.  In light of the foregoing, it cannot be said that Plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985

claims against these Defendants are plausible.  As the persons in control of these entities, their participation in the City's illicit plan are necessarily implicated.  As such, Plaintiffs' claims against these Defendants should not be dismissed.

  D.  <u>Plaintiffs' Complaint Contains Sufficient Facts to Implicate the City under Monell</u>

As noted by Defendants, the government may be held liable under 42 U.S.C. § 1983 when its policy or custom "inflicts the injury" upon a plaintiff.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).  As above, this is precisely what Plaintiffs have alleged. Again, Plaintiffs contend that the City and its employs engaged in "*an intentional policy and practice* of enforcing the IPMC, the OFC and other applicable codes with respect to Shoregate Towers in a manner that differed from how it enforced these codes with respect to other residential rental properties within the City of Willowick."  See, complaint, ¶ 59 (emphasis added).

Plaintiffs' complaint states that the City and its employees maintained numerous property maintenance violation actions against STNS and Plaintiffs, enforcing the provisions of the IPMC and the OFC against STNS and Plaintiffs, but not against other similarly situated property owners, including those in possession and control of the Property both before and after Plaintiffs were in possession of the Property.  See, complaint, generally.  Plaintiffs further allege that the City's policy and practice stemmed not from any concern for the safety of the Property, but from the animus of the City and its employees towards Plaintiffs on account of their race and national origin (i.e., from racism and xenophobia).  Given the statements attributed to Gwirtz above, the inference is clear that, at the very least, the decision to prosecute Plaintiffs and STNS was the product of ratification of such policy by those in authority (i.e., by Vanni and Langraf).  As such, Plaintiffs' 42 U.S.C. § 1983 claim against the City should not be dismissed.

24

E.        The Individual Defendants are not Entitled to Qualified Immunity

The doctrine of qualified immunity does not protect those who knowingly violate the law. Reedy v. Huron School District, 764 F. Supp.3d 591 (S.D. Michigan 2025), citing to Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed.2d 411 (1985).  See, also, Maternal Grandmother, ADMR v. Hamilton County Department of Job and Family Services, 167 Ohio St. 3d 390,  391, 193 N.E.3d 536, 538 (2021).  Under Ohio law, the doctrine of qualified immunity is, likewise, not available when a government employee acts with malice.  Id.  Plaintiffs' complaint plainly states that Defendants acted with malice – that they knowingly and willingly enforced the IPMC and the OFC against STNS and Plaintiffs in a manner that differed from that utilized with respect to other owners of residential rental property within its jurisdiction, and that they did so in furtherance of a combined effort to destroy Plaintiffs' interest in the Property. Plaintiffs do not allege, as Defendants contend, that Defendants were merely mistaken.  Plaintiffs allege that Defendants knowingly and willingly violated Plaintiffs' constitutional rights – based on their bias and prejudice towards Plaintiffs stemming from the color of their skin and their national origin – in an attempt to bankrupt Shoregate Towers.  The result of Defendants' conspiracy was the filing of a foreclosure action against STNS by Fannie Mae and the concomitant loss of Plaintiffs' financial interest in the Property.

Brennan, Ferritto and the other Willowick Defendants may have had a duty to enforce the law relative to the proper maintenance of premises within the City of Willowick, but this is not what Plaintiffs allege.  Plaintiffs allege that the City and its employees purposefully engaged in a practice and policy of enforcing municipal ordinances against people of color, specifically Plaintiffs, in a manner that it did not employ against people with white skin.  Such constitutes a clear violation of law that the doctrine of qualified immunity was not intended to protect.

25

Plaintiffs' complaint sets forth plausible claims that preclude protection under the doctrine.  As such, Plaintiffs request that the Court reject Defendants' contention in this regard.

F. Plaintiffs have Standing

Plaintiffs have alleged concrete injuries as a result of Defendants' actions, namely the loss of their investment in the Property stemming from Defendants' coordinated actions against them, STNS and the Property.  Although some of these actions were directed against STNS, as the owners of the entity Plaintiffs were necessarily affected.  All Defendants were fully aware of Plaintiffs' identities.  They appeared at criminal court hearings in the Willoughby Municipal Court and conferred with the other Defendants with regard to enforcement actions against Plaintiffs and STNS.  Given the foregoing, it cannot be reasonably contended that Plaintiffs do not have standing.  They are the parties ultimately affected by Defendants' actions.  As such, the claims against Defendants should not be dismissed for lack of standing.

G. Plaintiffs' Claims for Defamation are not Barred by the Statute of Limitations

The one-year period of limitations with respect to an action for defamation generally accrues when the defamatory statement is published.  Friedler v. Equitable Life Assurance Society of U.S., 86 F. Appx. 50 (6th Cir. 2003).  Libelous statements, however, begin to accrue upon the discovery of such statements.  Weidman v. Hildebrant, 178 Ohio St.3d 3 (2024).  In Count II of their complaint, Plaintiffs allege that the City and its employees communicated with Fannie Mae and LMHA concerning the Property's purported maintenance issues.  See, complaint, ¶ 79.  As a result of false statements made by these Defendants, Plaintiffs claim that suffered losses, including the loss of their investment in the Property.  See, complaint, ¶ 81.

Plaintiffs further allege that throughout the period of the City's prosecution of Plaintiffs and STNS, the City and its employees were communicating with LMHA "in an effort to

encourage this entity to terminate its contracts with STNS" and with tenants of Shoregate Towers "in an effort to encourage those tenants to file complaints against STNS and its owners." See, complaint, ¶¶ 55 and 56. Nowhere in the complaint, however, is there an allegation as to exactly when any false factual statements were made to LMHA or Fannie Mae. Plaintiffs make no claim, moreover, that the efforts to encourage tenants to file complaints against STNS, or to encourage LMHA to terminate its Section 8 contracts with STNS, included the making of false factual statements.

As stated in Plaintiffs' complaint, Fannie Mae filed the foreclosure action on May 24, 2024. See, complaint, ¶ 67. Plaintiffs' contention is that the City and its employees communicated with Fannie Mae prior to this date, but they do not allege when such communications occurred. Plaintiffs believe that such communications occurred shortly before Fannie Mae filed the foreclosure action (as is evinced by Fannie Mae's complaint), but they do not know exactly when such communications occurred. Plaintiffs learned of these communications, however, upon the filing of Fannie Mae's complaint. As such, it is not clear that Defendants are entitled to judgment on statute of limitations grounds, as there is a set of facts, consistent with Plaintiffs' complaint upon which Plaintiffs could prevail. As such, Plaintiffs request that the Court reject Defendants' contention in this regard.

IV.    Conclusion

Plaintiffs complaint, within its four corners, sets forth plausible claims for the violation of Plaintiffs' civil rights and for civil conspiracy, as well as other torts. The complaint contains sufficient factual allegations related to the City's selective enforcement of the IPMC and the OFC against Plaintiffs. Plaintiffs claim that such selective enforcement was the result of a pattern and practice of the City by which it

27

chose to enforce the IPMC and the OFC against people of color or those from other cultures, namely Plaintiffs, but not other people. The facts set forth in the complaint, moreover, establish that the City's efforts to harass Plaintiffs by the filing of duplicative criminal cases against them were largely unsuccessful, as 11 of the 13 those cases, as well as all 7 cases against Plaintiffs, ultimately resulted in decisions exonerating Plaintiffs. Through the actions of Defendants, however, Plaintiffs lost their financial interest in Shoregate Towers.

Most telling is the fact that the City never enforced the IPMC of the OFC against previous owners of the Property, only against Plaintiffs. Moreover, when Plaintiffs were dispossessed of the Property, the City ceased its enforcement actions relative to Shoregate Towers. Such facts give rise to a clear inference that Defendants were engaged in a civil conspiracy to destroy Plaintiffs' investment in Shoregate Towers. Given the foregoing, Plaintiffs' claims are plausible and should not be dismissed, at least not at the pleadings stage before Plaintiffs have been afforded the opportunity to conduct discovery.

Finally, in the even the Court finds any of Defendants' arguments to be persuasive, Plaintiffs move the Court, in the alternative pursuant to Civil Rule 15(a)(2), for leave to amend its pleadings to include factual allegations not contained within the four corners of Plaintiffs' complaint. As previously stated, Plaintiffs did not include in their complaint, among other things, factual allegations regarding Gwirtz' admission that she was not permitted the discretion to settle cases with STNS or Plaintiffs on customary terms, but was allowed to enter into pleas with these criminal defendants only if they entered pleas of guilty and accepted full responsibility for their purported crimes.

28

In addition, as Defendants claim that they are unable to determine exactly what claims are being made in Plaintiffs' complaint, Plaintiffs request leave to amend their complaint to set forth more fully all applicable federal and state law claims against Defendants.  In light of Defendants' arguments, Plaintiffs seek leave to amend their complaint to comply with the authorities cited by Defendants in their joint motion.

CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum in Opposition to Defendants' Joint Motion for

Judgment on the Pleadings and Alternative Motion to Amend Plaintiffs' Complaint was

deposited in the U.S. mail, postage prepaid, on this 13th day of August, 2025, for regular

delivery, with copy by e-mail, to the following:

John T. McLandrich, Esq.
Mazanec, Raskin & Ryder, L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, Ohio 44139
jmclandrich@mrrlaw.com
Attorney for Willowick Defendants

Jonathan H. Krol, Esq.
Reminger Co., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
jkrol@reminger.com
Attorney for FHRC Defendants

Marshal M. Pitchford, Esq.
Dicaudia, Pitchford & Yoder, Esq.
209 S. Main Street, Third Floor
Akron, Ohio 44308
mpitchford@dpylaw.com
Attorney for LMHA Defendants

/s/ Mark S. O'Brien

Mark S. O'Brien
Attorney for Plaintiffs

30