**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEMMA GETACHEW, *et al.*, | ) | Case No. 1:25-cv-219 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| CITY OF WILLOWICK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Lemma Getachew and Guenet Indale filed suit against fourteen Defendants for alleged violations of their federal civil rights. They also bring various claims under State law. All Defendants jointly move for judgment on the pleadings. For the reasons that follow, the Court **GRANTS IN PART** the motion for judgment on the pleadings.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiffs' favor, as the Court must in the current procedural posture, the complaint alleges the following facts.

Lemma Getachew and Guenet Indale, who are black, immigrated from Ethiopia and are naturalized U.S. citizens. (ECF No. 1, ¶¶ 19 & 20, PageID #5.) The two own Shoregate Towers NS, LLC ("STNS"). (*Id.*, ¶ 21, PageID #6.) This entity held title to Shoregate Towers, an apartment complex in the City of Willowick. (*Id.*, ¶ 22, PageID #6.)

Sean Brennan and Al Ferritto are building and housing inspectors for the City of Willowick. (*Id.*, ¶ 23, PageID #6.) Mr. Brennan and Mr. Ferritto enforce certain building, housing, and zoning codes within the City of Willowick and perform annual inspections of residential rental properties to assess compliance. (*Id.*, ¶¶ 25 & 27, PageID #6.) Bill Malovrh and Dan O'Connell are fire inspectors for the City of Willowick. (*Id.*, ¶ 24, PageID #6.) They enforce the Ohio Fire Code and perform regular inspections of residential rental properties to ensure compliance. (*Id.*, ¶¶ 26 & 28, PageID #6.)

The "customary practice in [N]ortheast Ohio" regarding building, housing, or property-maintenance violations is "for a municipality to work with the property owner to correct identified maintenance issues." (*Id.*, ¶ 44, PageID #9.) Once the municipality is satisfied that alleged violations are being addressed, code enforcement officers and prosecutors "have traditionally agreed to discontinue pursuit of violation notices and/or criminal charges". (*Id.*, ¶ 46, PageID #10.) And once a property has been brought into compliance, code enforcement officers and prosecutors customarily "dismiss cases against an alleged offender." (*Id.*, ¶ 45, PageID #9.) However, Plaintiffs allege that the City of Willowick did not follow this customary practice with respect to Shoregate Towers. (*Id.*, ¶ 47, PageID #10.)

"Prior to Plaintiffs' acquisition of their ownership interest in Shoregate Towers," Plaintiffs allege that building and housing officials "rarely visited" the property and "generally did not follow up on maintenance inspections and/or alleged violations." (*Id.*, ¶ 50, PageID #10.) In 2021 or 2022, Plaintiffs allege that the four

2

inspectors—Mr. Brennan, Mr. Ferritto, Mr. Malovrh, and Mr. O'Connell—learned of Plaintiffs' race and ethnicity. (*Id.*, ¶ 29, PageID #7.) Then, these Defendants allegedly "began increasing their code enforcement activities" at Shoregate Towers, including issuing violation notices to STNS for alleged property-maintenance deficiencies (*id.*, ¶¶ 30–31 & 51, PageID #7 & #10), and Mr. Brennan and Mr. Ferritto "refused to reinspect" Shoregate Towers to verify that STNS addressed the maintenance issues (*id.*, ¶¶32–33, PageID #7).

Plaintiffs allege that Mr. Brennan and Mr. Ferritto treated Shoregate Towers in a "different manner" from "other similarly situated properties within the City of Willowick." (*Id.*, ¶¶34–35, PageID #7.) They claim that "the City and its employees engaged in a pattern of harassment" in the enforcement of code violations at Shoregate Towers. (*Id.*, ¶ 48, PageID #10.) From December 2021 through August 2024, Mr. Brennan and Mr. Ferritto appeared at Shoregate Towers on a "regular basis," "often visiting the [p]roperty several times a day," and "engaged on-site management and maintenance staff in a relentless campaign of maintenance and repair requests." (*Id.*, ¶ 49, PageID #10.) Beginning in December 2021, Mr. Brennan "increased his code enforcement activity" by filing cases charging criminal code violation against STNS for maintenance deficiencies. (*Id.*, ¶ 36, PageID #7.) Also, he filed criminal cases against Mr. Getachew and Ms. Indale individually. (*Id.*, ¶ 37, PageID #8.) Between December 1, 2021 and December 31, 2023, Mr. Brennan filed thirteen separate criminal cases for property-maintenance code violations against STNS and against Mr. Getachew and Ms. Indale. (*Id.*, ¶ 38, PageID #8–9.) Six cases

3

were filed against Shoregate Towers.  (*Id.*)  Four cases were filed against Mr. Getachew.  (*Id.*)  Three cases were filed against Ms. Indale.  (*Id.*)

Plaintiffs allege that the proceedings included "duplicative and repetitive claims" and were filed against Plaintiffs individually "contrary to customary practice."  (*Id.*, ¶¶ 39 & 52, PageID #9–10.)  They claim that counsel for the City of Willowick "refused to engage in customary negotiations with STNS" and "instead insisted" that Plaintiffs and STNS plead guilty.  (*Id.*, ¶ 53, PageID #11.)  Plaintiffs allege that eleven of the thirteen cases resulted in "complete and final dismissals and/or acquittals," that none of the seven cases filed against them "resulted in a judgment of conviction," and that they "were ultimately absolved of all criminal liability."  (*Id.*, ¶¶ 40–42, PageID #9.)

Plaintiffs allege that "employees of the City" communicated with representatives of Fannie Mae regarding the pending code violation cases (*id.*, ¶ 54, PageID #11), contacted tenants "to encourage those tenants to file complaints against STNS . . . or to discontinue their tenancies" (*id.*, ¶ 55, PageID #11), and communicated with employees of Defendant Lake Metropolitan Housing Authority "to encourage this entity to terminate its contracts with STNS" (*id.*, ¶ 56, PageID #11).  Lake Metropolitan Housing Authority terminated its contact with STNS for Section 8 housing.  (*Id.*, ¶ 117, PageID #19.)  Plaintiffs allege that it did so because of "Brennan's and Brewer's conduct."  (*Id.*)  "[A]ll because of the color of their skin, their ethnicity[,] and their national origin," Plaintiffs allege that the City of Willowick and

4

its employees intended to "destroy" Plaintiffs' investment and "force" the dispossession of their ownership interest in Shoregate Towers. (*Id.*, ¶ 57, PageID #11.)

On May 24, 2024, Fannie Mae filed a foreclosure action in State court regarding Shoregate Towers and moved to appoint a receiver. (*Id.*, ¶ 67–68, PageID #12–13.) On August 16, 2024, the court appointed a receiver who assumed possession and operational control of the property from STNS. (*Id.*, ¶¶ 69–70, PageID #13.) After the appointment of the receiver, Plaintiffs allege that the City of Willowick ceased its code enforcement activity at Shoregate Towers, including inspections of the property, discontinued all pending administrative enforcement actions against the property, and stopped filing criminal cases for code violations. (*Id.*, ¶¶ 71–73, PageID #13.)

## STATEMENT OF THE CASE

Plaintiffs filed this action against the City of Willowick, Sean Brennan, Al Ferritto, Mandy Gwirtz, Stephanie Landgraf, Bill Malovrh, Dan O'Connell, and Michael Vanni (the "Willowick Defendants"); the Lake Metropolitan Housing Authority, Eric Martin, and Aaron Brewer (the "LMHA Defendants"); and the Fair Housing Resource Center, Inc., Patricia Kidd, and Michelle Brunson (the "FHRC Defendants"). (*Id.*, ¶¶ 5–18, PageID #4–5.) Plaintiffs bring eight claims that arise from the same alleged course of conduct, including claims under 42 U.S.C. § 1983 for violations of their civil rights, civil conspiracy pursuant to 42 U.S.C § 1985, and defamation, tortious interference with a business relationship, malicious prosecution, and abuse of process under Ohio law. (*Id.*, ¶¶ 58–119, PageID #11–19.)

The Willowick Defendants, LMHA Defendants, and FHRC Defendants filed separate answers.  (ECF No. 19; ECF No. 20; ECF No. 21.)  Then, all Defendants jointly moved for judgment on the pleadings.  (ECF No. 27.)

**ANALYSIS**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings essentially constitutes a delayed motion under Rule 12(b)(6) and is evaluated under the same standard.  *See, e.g., Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016).  In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law.  *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021).

In construing the pleadings, the Court construes factual allegations in the light most favorable to the non-movant, accepts them as true, and draws all reasonable inferences in the non-movant's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]"  *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

Plaintiffs bring eight claims for violation of civil rights, pursuant to 42 U.S.C. § 1983 (Claim 1); defamation (Claim 2); tortious interference with a business relationship (with Lake Metropolitan Housing Authority) (Claim 3); tortious interference with a business relationship (with Fannie Mae) (Claim 4); malicious prosecution (Claim 5); abuse of process (Claim 6); defamation (Claim 7); and civil conspiracy, pursuant to 42 U.S.C. § 1985 (Claim 8). Defendants argue that it is unclear whether Plaintiffs are bringing the claim for malicious prosecution under federal or State law. (ECF No. 27-1, PageID #198.) In their response, Plaintiffs clarify that they are bringing this claim under State law. (ECF No. 29, PageID #239–40.) The Court reads the complaint as bringing Claims 1 and 8 under federal law and Claims 2–7 under State law. The Court notes that, in their response, Plaintiffs include facts that they did not allege in the complaint. The Court cannot and does not consider those facts in its analysis.

## I.     Defendants Vanni, Landgraf, Gwirtz, Martin, Kidd, and Brunson

As an initial matter, the Court dismisses the following Defendants:  Michael Vanni; Stephanie Landgraf; Mandy Gwirtz; Eric Martin; Patricia Kidd; and Michelle Brunson.  Defendants argue that Plaintiffs fail to allege any wrongdoing by these Defendants.  (ECF No. 27-1, PageID #190.)  Mr. Vanni, Ms. Landgraf, Ms. Gwirtz, and Mr. Martin appear only in the complaint's caption and in the section identifying the parties.  (ECF No. 1, PageID #2–5.)  But there are no other allegations against them.  The only allegation against Ms. Kidd and Ms. Brunson is that they "regularly attended hearings and other court appointments regarding STNS, Getachew and Indale." (*Id.*, ¶ 105, PageID #17–18.)  Plaintiffs do not address these arguments in their brief.  Therefore, the Court finds that they have abandoned their claims, if any, against these Defendants.  Therefore, the Court **DISMISSES** these Defendants.

## II.    Federal Claims (Claims 1 and 8)

Plaintiffs bring two federal claims for "violation of civil rights under 42 U.S.C. § 1983" (Claim 1) and civil conspiracy under 42 U.S.C. § 1985 (Claim 8).  The Court reads the complaint as bringing Claim 1 against the Willowick Defendants (other than Ms. Gwirtz, Ms. Landgraf, and Mr. Vanni—leaving the City of Willowick, Mr. Brennan, Mr. Ferritto, Mr. Malovrh, and Mr. Vanni) and Claim 8 against all remaining Defendants.

### II.A.  42 U.S.C. § 1983 (Claim 1)

To state a claim under Section 1983,  a plaintiff must allege:  (1) "a right secured by the United States Constitution"; and (2) "the deprivation of that right" (3) "by a person acting under color of state law." *Troutman v. Louisville Metro Dep't*

*of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001) (abrogated on other grounds)).  Defendants argue that the complaint "leaves the Willowick Defendants and this Court speculating as to what kind of violation allegedly occurred, how such a violation occurred, and what right or protection is implicated." (ECF No. 27-1, PageID #191.)  Defendants argue that the complaint is "too murky and ambiguous to sufficiently put the Willowick Defendants on notice of what they must defend against".  (*Id.*)  In their response, Plaintiffs argue that they alleged a claim for selective enforcement.  (ECF No. 29, PageID #231.)

The Court determines that the complaint does not make clear the theory Plaintiffs assert.  It could be a claim for racial discrimination.  But Plaintiffs do not say that.  It could be a claim for deprivation of property.  But Plaintiffs do not say that either.  Because Plaintiffs fail to identify the type of claim in their complaint, Plaintiffs fail to provide fair notice to the Willowick Defendants of the claim against which they must defend.  Doing so in a brief opposing a motion to dismiss does not provide the notice the Rules require.  To clarify their claim, Plaintiffs could have amended their complaint as of right in response to Defendants' motion, but they did not do so.  *See* Fed. R. Civ. P. 15(a)(1).  Nor do they so much as suggest any where in their papers that they want to seek leave to amend.  In any event, at this point, doing so would not be proper.  *See Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 783–84 (6th Cir. 2000).

Rule 8 requires more than alleging numerous facts and saying, in effect, there must be a violation of a constitutional right in there somewhere.  That is what this complaint does.  Plaintiffs do not even point to anything that allows the Court to infer that such a violation occurred.  Therefore, the Court **DISMISSES** Plaintiffs' Section 1983 claim.

### II.B.  42 U.S.C. § 1985 (Claim 8)

Though Plaintiffs do not specify under which subsection of Section 1985 they proceed, the Court reads the complaint as bringing a claim for conspiracy under Section 1985(3).  To establish a claim under Section 1985(3), a plaintiff must allege facts showing:

> (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws[,] and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen.

*Brown v. Cioffi*, No. 24-1168, 2024 WL 5440982, at *16 (6th Cir. Oct. 10, 2024) (quoting *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).  A plaintiff "must plead conspiracy claims 'with some degree of specificity and. . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Arsan v. Keller*, 784 F. App'x 900, 913–14 (6th Cir. 2019) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

As with Claim 1, the Court determines that Plaintiffs fail to identify the federally protected right that is the subject of Defendants' alleged conspiracy. Accordingly, Plaintiffs fail to provide notice to the Defendants.  Therefore, the Court **DISMISSES** Plaintiffs' Section 1985 claim.

The Court notes that Plaintiffs' Section 1985 claim was the only claim brought against the LMHA Defendants.  Accordingly, the Court's dismissal of this claim has the effect of dismissing the LMHA Defendants from the action.

## III.    State-Law Claims (Claims 2 through 7)

Plaintiffs assert six State-law claims against the remaining Defendants.  (ECF No. 1, PageID #14–18.)  The Court has supplemental jurisdiction over these State-law claims pursuant to 28 U.S.C. § 1367.  Under federal law "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."  28 U.S.C. § 1367(a).  This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court.  *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances.  28 U.S.C. § 1367(c).  Supplemental jurisdiction "is a doctrine of discretion."  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462-63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)).  Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims

11

over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses all of Plaintiffs' federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiffs' State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiffs' right to pursue the remaining claims in State court. *See* 28 U.S.C. § 1367(c)(3). "[G]enerally 'when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record and because the case remains in its early stages, the Court declines to exercise its discretion to retain jurisdiction over Plaintiffs' State-law claims against the remaining Defendants. Therefore, the Court **DISMISSES** these claims **WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings on all claims against Defendants Michael Vanni, Stephanie Landgraf, Mandy Gwirtz, Eric Martin, Patricia Kidd, and Michelle Brunson and the federal claims against the remaining Defendants (Claims 1 and 8).

Further, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs'

State-law claims (Claims 2–7) and **DISMISSES** them **WITHOUT PREJUDICE**.

    **SO ORDERED.**

Dated:  March 27, 2026

                              J. Philip Calabrese
                              United States District Judge
                              Northern District of Ohio

13